EXHIBIT A

**LAW OFFICE OF BARRY W. ROREX, PLC**
2 East Congress Street, Suite 900
Tucson, Arizona 85701
(520) 495-7596- (520) 838-8061 (fax)

Barry W. Rorex
Bar No. 025910, PCC No. 66117
Barry@brorexlaw.com
Attorney for Plaintiff

IN THE JUSTICE COURT OF ARIZONA
IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| DAMIAN WHITE, | ) Case No.: **CV** 1 0 0 2 3 0 1 6 |
| Plaintiff | ) |
| | ) SUMMONS |
| vs. | ) |
| NATIONAL CREDIT SYSTEMS, | ) |
| INCORPORATED, and MORRISON, EKRE | ) |
| & BART MANAGEMENT SERVICES, | ) |
| INCORPORATED | ) |
| | ) |
| Defendants | ) |

THE STATE OF ARIZONA TO THE DEFENDANT:
National Credit Systems, Incorporated
C/O Michael Vix
18253 W Estes Way
Goodyear, AZ  85338

      YOU ARE HEARBY SUMMONED and required to serve upon Plaintiff's attorney an

answer to the complain which is herewith served upon you, within twenty (20) days, exclusive of

the day of service, after service of this summons upon you if served within the State of Arizona,

and within thirty (30) days, exclusive of the day of service, if served outside the State of Arizona.

Direct service is complete when made.  Arizona Rules of Civil Procedure, Rule 4.

      YOU AR HEREBY NOTIFIED that in case of your failure to appear and defend within

the time applicable, judgment by default may be taken against you for the relief demanded in the

Complaint.

YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer or other proper response in writing with the Clerk of this Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or other response upon the Plaintiff's attorney.  Arizona Rules of Civil Procedure, Rule 10. The name and address of Plaintiff's attorney is:

Barry W. Rorex
2 East Congress Street, Suite 900
Tucson, AZ 85701

REQUESTS FOR REASONABL ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE DIVISION ASSIGNED TO THE CASE BY PARTIES AT LEAST THREE (3) JUDICIAL DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.

AUG 19 2010

SIGNED AND SEALED this _____ day of _____, 20_____.

_____
Justice of the Peace

**LAW OFFICE OF BARRY W. ROREX, PLC**
2 East Congress Street, Suite 900
Tucson, Arizona 85701
(520) 495-7596- (520) 838-8061 (fax)

Barry W. Rorex
Bar No. 025910, PCC No. 66117
Barry@brorexlaw.com
Attorney for Plaintiff

IN THE JUSTICE COURT OF ARIZONA
IN AND FOR THE COUNTY OF PIMA

| | |
|---|---|
| DAMIAN WHITE, | ) Case No.: |
| | ) |
| Plaintiff | ) COMPLAINT |
| | ) |
| vs. | ) (Defamation and Unlawful Debt Collection |
| NATIONAL CREDIT SYSTEMS, | ) Practices) |
| INCORPORATED, and MORRISON, EKRE | ) |
| & BART MANAGEMENT SERVICES, | ) Assigned to CV 10 023016 |
| INCORPORATED | ) Hon._____ |
| | ) |
| Defendants | ) |

Plaintiff, DAMIAN WHITE, by and through the undersigned attorney, sues Defendants NATIONAL CREDIT SYSTEMS, INC. ("NCS") and MORRISON, EKRE & BART MANAGEMENT SERVICES, INC. ("MEB") and alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under A.R.S. § 22-201(b).

2. The amount in controversy falls within the jurisdiction of this Court.

3. Venue is proper in the Justice Court of Pima County in that Defendant NCS transacts business in Pima County, Defendant MEB both is located and transacts business in Pima County, and the conduct complained of occurred here.

## PARTIES

4. Plaintiff, Damian White, is a natural person residing in Maricopa, Arizona.

5. Defendant NCS is a Georgia Corporation engaged in the business of collecting debts in this state with principal place of business at 3750 Naturally Fresh Blvd., Atlanta, GA 30349 and with statutory agent Michael Vix at 18253 W Estes Way Goodyear, AZ 85338.

6. The principal purpose of Defendant NCS is the collection of debts using the mail and telephone, and Defendant NCS regularly attempts to collect debts alleged to be due another.

7. Defendant NCS is a "debt collector" as defined by § 803(6) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (hereinafter "FDCPA"), and by A.R.S. § 32-1001(A)(2).

8. Defendant MEB is an Arizona Corporation with its principal place of business in Tucson.

## FACTUAL ALLEGATIONS

9. From January 12, 2009 to June 4, 2009, Plaintiff leased an apartment designated C205 ("the apartment") at the Summit Ridge Complex located at 1252 S. Craycroft Road, Tucson, Arizona 85711.

10. Defendant MEB was the property manager for this apartment at all times relevant to this case.

11. On May 24, 2009 at approximately 10 p.m., a fire was started on the stove in the apartment. The fire allegedly caused $2,007.00 in damages to the apartment, according to MEB.

12. Plaintiff was never in the apartment on May 24, 2009.

13. On the day of the fire, Plaintiff's girlfriend Anayansi Moreau, had not been in the apartment since approximately 9:45 that morning.

14. Other residents of the apartment complex noticed the fire, entered the apartment, extinguished the fire and called 911.

15. Tucson Police and fire responded at approximately midnight on May 25, 2009.

16. Plaintiff did not return to the apartment that night. Ms. Moreau did not return until late that night when police and fire were already on scene.

17. Tucson Police Department Officer Guido reported the damage as arson, not caused by an occupant of the apartment. A copy of Officer Guido's report is attached as Exhibit "A", hereto.

18. Tucson Fire Department Investigator Tinnin was called because of suspected arson.

19. Investigator Tinnin reported the fire as intentionally ignited. He also reported Ms. Moreau as the victim of the fire and as having "no involvement in its cause or origin." A copy of Investigator Tinnin's report is attached as Exhibit "B", hereto.

20. On June 4, 2009, Defendant MEB terminated Plaintiff's lease on the apartment and demanded he pay $2,007.00 to repair damages caused by the fire.

21. Plaintiff had no duty to pay these damages.

## COUNTS ONE AND TWO
(Defamation)

22. Plaintiff re-alleges and incorporates paragraphs 1-21 above as though fully set forth herein.

23. Plaintiff repeatedly indicated to Defendant MEB that the fire was not the result of his actions nor the actions of any of his guests. He also informed Defendant MEB that his

statements were supported by both the Tucson Police and Fire Departments' investigators.

24. Despite being aware that both Tucson Police and Tucson Fire investigators believed someone other than Plaintiff or Ms. Moreau had intentionally caused the fire, Defendant MEB told Plaintiff he was required to pay the repair bills.

25. As neither Plaintiff nor were his guests was responsible for the fire and therefore required to pay the bills, Defendant MEB's statement was false.

26. Ms. Moreau was present when this false statement was made.

27. Defendant MEB later again communicated this false statement to third parties, including Defendant NCS.

28. Falsely asserting that Plaintiff owed Defendant MEB money harmed the Plaintiff's reputation and as a result he has suffered damages.

**COUNT THREE**
(Defamation)

29. Plaintiff re-alleges and incorporates paragraphs 1-28 above as though fully set forth herein.

30. On October 20, 2009, Defendant NCS's Collection Representative Yecenia Vellon ("Vellon") sent a letter to Plaintiff. Vellon wrongfully demanded payment because Plaintiff had "[refused] to make suitable arrangement to satisfy [the debt]." Vellon informed Plaintiff Defendant NCS had reported him to the credit bureaus, and threatened potential garnishment, liens, and seizure of his personal property if he did not make "voluntary payment." A copy of the October 20th letter is attached as Exhibit "C" hereto.

31. When Defendant NCS reported the debt wrongfully attributed to Plaintiff to the credit bureaus, it either knew or should have known that this debt was false.

32. Defendant NCS's publication of false statements harmed Plaintiff and caused him to suffer damages, including damage to his credit score.

## COUNTS FOUR AND FIVE
### (Violations of Fair Debt Collection Practices Act)

33. Plaintiff re-alleges and incorporates paragraphs 1-32 above as though fully set forth herein.

34. On September 10, 2009, Defendant NCS first contacted Plaintiff via letter attempting to collect the debt it alleged Plaintiff owed to Defendant MEB. A copy of the initial letter is attached as Exhibit "D", hereto.

35. After receiving this letter, Plaintiff responded to Vellon first by phone call and then by a letter informing Defendant NCS that he disputed the claim in good faith and refused to pay the debt. Plaintiff included copies of both Officer Guido's report and Investigator Tinnin's report in his letter. A copy of Plaintiff's letter to Defendant NCS is attached as Exhibit "E", hereto.

36. Upon receipt of this dispute, Defendant NCS had a statutory duty to validate the debt under § 809 (b) of the FDCPA before resuming any collection activities.

37. On September 16, 2009, Defendant NCS's Collection Representative Burgendi Davis sent a letter to Plaintiff claiming to have investigated and dismissed Plaintiff's dispute. This letter claims to have included documentation provided by Defendant MEB, but there were no enclosures in the letter Plaintiff received. No explanation or details of the alleged investigation were disclosed. A copy of letter is attached as Exhibit "F", hereto.

38. On September 17, 2009, Plaintiff informed Defendant NCS that he continued to dispute the charges and refused to pay the demanded debt. A copy of Plaintiff's dispute is attached as Exhibit "G," hereto.

39. Following Plaintiff's written refusal to pay the debt, Defendant NCS had statutory duties under § 805 of the FDCPA and Title 20, Chapter 4, Article 15, § 1513(B) of the Arizona Administrative Code (hereinafter "R20-4-1513(B)") to cease communications in furtherance of collection of the alleged debt with Plaintiff.

40. Nevertheless, shortly after September 17, 2009, Vellon once again contacted Plaintiff by phone. She informed him that her supervisor had looked over the paper work he had submitted and that the supervisor "deemed" the debt still valid. She also said that if Plaintiff did not pay the balance, Defendant NCS would report the debt on Plaintiff's credit report. When Plaintiff asked to speak with the supervisor, Vellon said she would not allow it and that "what you need to do is pay us."

41. By failing to validate the debt before resuming collections activities, Defendant NCS violated its statutory duty under the FDCPA causing Plaintiff to be harmed and to suffer damages.

42. By failing to cease communications in furtherance of collection of the alleged debt with Plaintiff, Defendant NCS violated its statutory duties under the FDCPA and R20-4-1513(B) causing Plaintiff to be harmed and to suffer damages.

## COUNT SIX
(Violation of Fair Debt Collection Practices Act)

43. Plaintiff re-alleges and incorporates paragraphs 1-42 above as though fully set forth herein.

44. October 20, 2009, NCS Representative Vellon again sent a letter to Plaintiff in furtherance of collection of the debt. It demanded payment, threatened potential garnishment, liens, and seizure of his personal property. A copy of the October 20th letter is attached as Exhibit "C," hereto.

45. At the time, Defendant was under a continuing statutory obligation to cease communication regarding collection efforts as set forth above.

46. By failing to cease communications with Plaintiff, Defendant NCS violated its statutory duties under the FDCPA and R20-4-1513(B) causing Plaintiff to be harmed and to suffer damages.

## COUNT SEVEN
### (Violation of Fair Debt Collection Practices Act)

47. Plaintiff re-alleges and incorporates paragraphs 1-46 above as though fully set forth herein.

48. On February 1, 2010, NCS Representative Vellon contacted Plaintiff yet again regarding collection of the debt. A copy of the February 1 letter is attached as Exhibit "H," hereto.

49. At the time, Defendant was under a continuing statutory obligation to cease communication regarding collection efforts as set forth above.

50. By failing to cease communications with Plaintiff, Defendant NCS violated its statutory duties under the FDCPA and R20-4-1513(B) causing Plaintiff to be harmed and to suffer damages.

WHEREFORE, Plaintiff requests judgment against the Defendant as follows:

1. Against Defendants MEB and NCS declaring the alleged debt void.

2. Against Defendant MEB declaring its false reporting of debt to be defamatory.

3. Against Defendant NCS declaring its false reporting of debt to be defamatory.

4. Against Defendant NCS declaring its conduct a violation of the FDCPA.

5. Statutory damages against Defendant NCS pursuant to 15 U.S.C. § 1692k for each

   violation.

6. Punitive damages against Defendants in an amount to be determined by the Court.

7. Granting Plaintiffs their costs incurred herein, including reasonable attorney fees

   pursuant to 15 U.S.C. 1692k.

8. Such other relief as this Court deems just and proper under the circumstances.

RESPECTFULLY SUBMITTED this _19_ day of August, 2010.

Barry W. Rorex
Law Office of Barry W. Rorex, PLC
Attorney for Plaintiffs

# Exhibit A



APPROVED - 05/25/2009



**CONTINUATION REPORT**

PAGE 2 OF 3

APPROVED - 05/25/2009

# TUCSON POLICE DEPARTMENT
## POLICE REPORT NARRATIVE

REPORT NO. TPD 09052409 [illegible]
CONNECT-UP REPORT NO.

PAGE 3 OF 3

[illegible] [redacted]

NARRATIVE

[illegible] responded to the listed address in reference to a report of an arson. Prior to my arrival the fire was put out [illegible] Fire Department Fire Investigators were already at the location. Upon arrival I contacted TFD Fire [illegible] #26725

[illegible] stated the following. TFD Fire Personnel responded to the listed apartment in reference to a fire. Upon [illegible] complex already put out the fire. The neighbor stated he smelt smoke and discovered a fire [illegible] [redacted] He entered the apartment by the front window. He observed a fire coming from the [illegible] apartment and took the fire extinguisher from the apartment walkway. He then returned [illegible] apartment where he put out the fire. Two burners on the stove were set to be on and he turned them off. He then [illegible] personnel upon arrival thought it was just a stove fire. Upon further examination they observed what [illegible] a paper towel roll, a box of cereal, and a phone book burnt on top of the stove. Fire Investigators [illegible] to the apartment. While investigating the incident the occupant of the residence, Anayansi Moreau, [illegible] the apartment.

[illegible] the following. She has been divorced from her ex-husband, [redacted] for [illegible] 5 years now. While married, [redacted] was verbally, mentally, and physically abusive to her. Since they [illegible] divorced [redacted] has threatened her multiple times. [redacted] has also vandalized her vehicle in the past. [illegible] [redacted] has a new girlfriend and had stopped threatening her. She thought the threats were over until 05-09-09. She [illegible] for mother's day. They got into a verbal [illegible] to [redacted] about having their daughters. Lorraine and [redacted] were involved in a domestic disturbance together. I [illegible] The same weekend Lorraine and [redacted] were involved in a domestic disturbance together. I [illegible] more details, but Anayansi did not wish to explain. Anayansi was told about the incident by Lorraine and [illegible] a police report. Police contacted [redacted] and he became upset. He sent a text message to her phone [illegible] was going to "burn in hell" for sending the police to his residence.

[illegible] Anayansi was picking up her daughters from [redacted] There is a protection order between Anayansi and [redacted] [illegible] police were contacted and conducted a preserve the peace while her daughters were given to her. Once [illegible] daughters they drove out to the town of Ajo to visit her friend and pick up her vehicle. They then returned [illegible] spent the rest of the day visiting her friend Carmen. As she returned home she observed TFD [illegible] outside of her apartment. TFD personnel informed her of the incident. Anayansi stated [redacted] might have a [illegible] apartment. Lorraine has a key for the apartment and [redacted] took the key from her and may have made [illegible]

[illegible] the apartment consisted of fire damage to the dry wall around the stove. The fire did not [illegible] of the apartment and only affected the external drywall. There is no estimated damage value to [illegible] contacted the surrounding units to apartment and only one neighbor was home. The neighbor in unit [illegible] be included in the report or be listed as a victim. Anayansi was provided a victim notification [illegible] There were no witnesses to the incident. The neighbor who put out the fire had already left prior to my arrival.

[illegible]

| | | | | |
|---|---|---|---|---|
| 49535 | 05/25/2009 | 01 11 | ODM | 12 |

IF ADDITIONAL PAGES ARE REQUIRED, USE A SUPPLEMENTARY CONTINUATION REPORT.

APPROVED - 05/25/2009

# Exhibit B

FAX NO. :5287915993                    Aug. 17 2039 00:40AM  P2

Investigative report for 1252 S Craycroft # C-205, 5/24/09, alarm # 09-00031998

Report by Investigator Tinnin, Tucson Fire Department, Fire Investigations

- ............ started in the kitchen of a 1 bedroom 1 bathroom 2nd floor apartment at a multi
  .................... large apartment complex of ordinary construction. The apartments
  ................. Ms. ............ was not at home at the time of the fire stating that she had left
  ................ approximately .... 000 hrs on the morning of the 25th.
  ................ damage to the stovetop, surrounding dry wall, and debris placed on to the
  .......... The remainder of the apartment suffered minor smoke damage.
- ........... residents of the complex noticed the fire. One of these residents, Joe Hernandez, states
  that after noticing the fire in the involved apartment he and another resident (name
  ............. pried open the front facing sliding window to the apartment and found debris on
  ........... lowered running (a phone book and dish towels), Mr. Hernandez also stated that the "
  ........... ignition of the stovetop was in the on position, he and the other resident turned off
  ......... stove and attempted to search the apartment for victims. Mr. Hernandez also stated
  .................... the sliding window that they entered was locked but easily opened by
  ........... pressing on the window.
- ............. investigation showed evidence of debris being placed on to the stovetop and
  ........... the one for flame of the stovetop. The charred remains of a phone book and
  ........... of .... at plastic debris were found on the exterior front walkway of the apartment after
  ........... been removed by suppression units
- Ms. Moreau reports having an on going dispute with her ex-husband, Shawn Moreau,
  ............. ........ arrangements of their children. Ms. Moreau also reports receiving what she
  ........ threatening text messages from her ex-husband recently referencing her " burning
  ... .............. According to Ms. Moreau her 16-year old daughter stated that Mr. Moreau had
  .......... ............ keys to the involved apartment from her.
- ......... .......... option of this investigator that Ms. Moreau was the victim of this fire and no
  .................... to fire or arson.
- ... scene evidence shows this fire to be incendiary in nature due to the placement of
  .............. debris placed on to the stovetop of the involved apartment and ignited by the
  ............ by persons unknown.

Rick ... Tinnin
... tigator Fire Investigations
.... Fire Department

# Exhibit C

National Credit Systems, inc
P.O. Box 312125
Atlanta, GA 31131-2125
Phone: 404-629-3728 Toll Free: 800-459-1529

... to satisfy the above aforementioned debt has left us ... all other recovery actions available to our client in your state

... reported this account to all three nations credit bureaus which is ... could not obtain credit rent or secure favorable interest rates

... if payment of account is not made we may recommend that our client proceed ... remedies available to them under the law. Our client may pursue is ... which may include any or all of the following, based upon ...

... included WC SC ... ...
... property is owned
... ...
... real estate
... real personal property)
... personal property)

... this matter if you contact me immediately.

... P.O. Box 312125 Atlanta GA 31131-2125

... This is an attempt by a debt collector. Any information obtained will be used for ...

# Exhibit D

National Credit Systems, Inc
P.O. Box 312125
Atlanta, GA 31131-2125
Phone: 404-629-2728 Toll Free: 800-459-1539

... ... that you have failed to make suitable arrangements concerning the above referenced
...

... ... we are processing this account for placement on your credit history with all three
... ... credit bureaus. If so reported, your ability to obtain credit, rent, or secure favorable
... ... may be affected for seven years from the date of delinquency

... ... the ... for us to place a hold on your account if you act now. You may be
... ... credit reporting entirely if we can work out a reasonable arrangement

... ... we ... take your individual situation into consideration.

... ... contact our office before this debt is placed on your credit record or reviewed
... ... legal action

... ... DEBT SYSTEMS, INC  PO Box 312125  Atlanta  GA 31131-2125

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for
that purpose

# Exhibit E

Damian White
18878 N Toledo Ave
Maricopa AZ 85238
Account 1025953

To whom it may concern,

Santis Credit Systems

PO Box 812573

Tempe Arizona 85281

To whom, I have enclosed all the documents in regards to my dispute with the Summit
Ridge Apartment complex. I spoke with the lead fire investigator, Randall Timin, of the
Tucson Fire Department. It's clearly stated that the cause of the fire was **ARSON** and he
denoted this on his fire report. I am not responsible for the events that took place on May
the 3rd. If Summit Ridge continues on their course of trying to blame myself or my
girlfriend for the fire, I will have no other option but to contact my attorney. If you have
any questions please feel free to call me. Thank you

Damian White

602 571 7311

# Exhibit F

# National
## Credit Systems, Inc.

National Credit Systems, Inc.    P.O. Box 312125 Atlanta, Ga. 31131    800-459-1539   404-629-2728

[illegible faded address block]

[illegible] RIDGE-MEB
[illegible] Account Number  ( 205
[illegible] Loan Number  92595s

[illegible]

[illegible] received your correspondence concerning the above referenced account.

[illegible] account has been investigated; however, we have yet to find sufficient evidence to validate [illegible] it is very important that you provide our company with all documentation [illegible] support your position.

[illegible] that new information is obtained which places doubt on the validity of this debt, we [illegible] and update our records accordingly.  In addition, National Credit Systems, Inc. will [illegible] update the information it may have reported to the three major credit bureaus, in full [illegible] with the provisions of The Fair Credit Reporting Act ,The Fair Debt Collections [illegible] Act and any state regulations that may be applicable.

[illegible] that National Credit Systems, Inc  is a third party debt collection agency whose [illegible] solely on behalf of other companies who have previously validated debts.

[illegible] we will find documentation provided to us by SUMMIT RIDGE-MEB.

[illegible]
[illegible] representative
[illegible]

[illegible] communication is from a debt collector.  This is an attempt to collect a debt and any [illegible] information obtained will be used for this purpose.

# Exhibit G

Damian White
18878 N Toledo Ave
Maricopa AZ 85138

[illegible]

[illegible]

[illegible]

[illegible] still disputing the above mentioned correspondence from you sent on
[illegible] 2009. As mentioned before I am Disputing the issue. I am not
[illegible] the damages caused to Summit Ridge apartments number C-205. You
[illegible] legal right to make me liable. As I informed your collection representative I am
[illegible] legal council

[illegible]

# Exhibit H

NC PT 304
PO BOX 4115
CONCORD CA 94524

ADDRESS SERVICE REQUESTED

February 1, 2010

#BWNRT-GT #*TL845611841C012#

DAMIAN WHITE
18878 N TOLEDO AVE
MARICOPA AZ 85138-2093

**National Credit Systems, Inc**
P.O. Box 312125
Atlanta, GA 31131-2125
Phone: 404-629-2728 Toll Free: 800-459-1539

Account ID: C-205
Account #: 1925953
Balance: $2007.00
Settlement Amount: $1003.50

NATIONAL CREDIT SYSTEMS, INC.
PO Box 312125
Atlanta, GA 31131-2125

*** Detach Upper Portion And Return With Payment ***

Re:  SUMMIT RIDGE-MEB / C-205

Account #:  1925953

Balance:  $2007.00

Settlement Amount:  $1003.50

National Credit Systems, Inc. has been authorized by our client to extend a special settlement opportunity on the above referenced account. If you pay by 02/26/2010, you may satisfy your debt in full at a 50% discount.

Do not let this generous offer slip away. We encourage you to consider using a tax refund or other resources to take advantage of this special opportunity to realize a very significant savings. Otherwise, we will continue with all collection activities to recover the full balance of the debt.

Once again, this is a dated offer good through 02/26/2010.

Sincerely,

YECENIA VELLON
Collection Representative
Direct Line: 404-419-1464  800-979-4393

Please direct all correspondence to:
NATIONAL CREDIT SYSTEMS, INC., PO Box 312125, Atlanta, GA 31131-2125

This is an attempt to collect a debt by a debt collector. Any information obtained will be used for that purpose.